SOLLAMI COMPAN, INC. v. THE SOLLAMI COMPAN Okay, the next case is number 13, 1389, NOVATEK, INC. v. THE SOLLAMI COMPAN. Mr. Morris, when you're ready. Good morning, Your Honor, and may it please the Court, I do have a visual aid, so to speak, to use, maybe of some help to the Court in the course of my presentation here this morning. Essentially, my client's position here is that the Court erred at both stages of the process in examining the summary judgment motion advanced by NOVATEK. Could you move for leave of the Court to bring exhibits, just so I know, because I don't remember seeing it. I did put opposing counsel on notice. They had no objection. These are the very same devices that were shown to the District Court in the Markman hearing. I assume that's a long way to say no, but nobody minds. Essentially, yes. No one has objected. I spoke yesterday, and I thought that I could bring them. Well, I think proceed. I think it's helpful to see what these things look like. Absolutely, yes. Two-dimensional and three-dimensional makes a big difference with something like this often. On page 41 of the blue brief, the appellant contends that removability, removal, and removed, three words and quotes, appear in the patents at issue, and I'm quoting, in express reference to the interaction between the bit holder and the bit block only. But 567 says, it would be desirable to provide a more efficient means for allowing removal of a bit from a bit holder. And there are similar references that reference the interaction between the bit and the bit holder as a removable one. Explain to me how you get to say what you say on page 41. Well, the reference in 567, which I believe is the only reference that appears in the specifications, is at the very beginning in the background of the invention portion of the discussion. And there, it's with reference to a feature of undercuts that would be underneath the flange of the bit, where it connects with the bit holder. Those undercuts be facilitating extraction of the bit. That's actually not a feature of any of the claims in 567 or 155, either of the two patents. I'll look for the other, I think there are other references as well. Unless I missed it, but I believe, Your Honor, that truthfully, from my review of it, and I've read it a number of times, that I believe that is the only real reference that appears here with regard to removability of the bit from the bit holder. Our position is, and I think it's well supported, that the lower court basically got off on a bit of a tangency because they focused so much on the bit in the terms of the claims construction process, they lost the sight of the fact that this is really a bit holder patent and not a bit patent. That's what's novel about both of the patents in suit. It's the bit holder and particularly the shank of the bit holder that facilitates its insertion into the base block by an interference fit. The slot in the shank makes it resiliently collapsible so it can basically have a friction fit, a tight friction fit with the base block that in turn is welded to the drum. It's not a bit patent. Certainly there is nothing in here that is novel about any bit. There's no description of a bit that is novel here at all. Soleme does not have any patents respecting any bits. Well, under column 2 of the 567, under the header, Detailed Description of the Preferred Embodiment, you say, referring to figure 2, the bit, generally indicated at 21, includes a forward end and a shank or rear end thereof. The forward end includes a hardened nose preferably made of tungsten carbide or like material, a middle tapered portion including reduced diameter, etc., etc. It's an awful lot of description under the heading Preferred Embodiment of the exact dimensions and or material for the bit if none of that was necessary or part of the invention. Why is it all in there under the Preferred Embodiment section? Well, that's only with respect to one figure in that particular patent. But under Detailed Descriptions of the Preferred Embodiment, are you saying this discloses an embodiment we chose not to claim? Exactly, yes. So the bit here is a disclosure. All of this detail on the bit may well be a Preferred Embodiment of the invention but isn't a claimed Preferred Embodiment of the invention. That's what you're saying? Yes, yes. This happens to be, and this is not uncommon in patents, to have a Preferred Embodiment. I know, but the difficulty is you began by saying, and I'm totally paraphrasing, but that everything in this patent is about bit holder. This isn't about bit. This invention is a bit holder. And I guess what you've just acknowledged with me, I think, is that the inventor's invention is a bit holder and one of his Preferred Embodiments may in fact be directed to a bit, but that isn't what's claimed. And I guess the contradiction is the notion that this patent is only about a bit holder. That's what I'm trying to point out to you, that this patent seems to me to disclose and suggest it is disclosing a Preferred Embodiment of a bit as well. Well, certainly there is an assembly that is referenced in the claims, and part of that assembly is a bit, but that is really the environment in which the bit holder functions. And the environment in which it functions is distinct from the claims themselves. Novotix carbide bolsters is brazed to a steel body. And on page 45 of your brief, Appellant contends that the process of removing the accused product's carbide tip and carbide bolsters, a sub-assembly from the steel body, would not be a destructive process. Correct. Is it also your position that such a removal process is, I'm using quotes, efficient, quick, and one that provides ease of removability, like the patents that Ish had described as one, not using, retaining nuts, clips, or the like? Well, it's certainly a simple process. All you're doing is applying heat. And again, using one of the visual aids here, this is actually the Novopik device here, the first one I showed you was the Solomy device to practice the invention. That carbide tip and PCD stinger, as they call it, the topmost piece here. It looks frighteningly like the front part of an artillery shell. I think the marshals may have thought I was bringing some sort of device like that in this morning. But in any event, yes, that's correct. And it is easily removed because all you do is apply heat and the braze melts away and that's the only thing that's holding this on there is that. But I might also add that ease of removability is not a condition of this patent either and it's not one of the claims. It's not referenced in any of the claims. Even the term removable really isn't. Only the term mountable appears, that the bit be mountable in some fashion to the front part of the bit holder. But removability is not addressed at all and that's, I think, another instance where the court got off track. We've got these cases, one of which, a number of which were cited. The K2 case, for example, involving the inline skate. There the patent language, the claim, specifically provided for permanent affixation and that became easy to distinguish a screw that one can remove with a screwdriver versus a rivet when you're dealing with plastic parts. You pretty much have to break it to get it apart that way. You don't have to break the Novopick to take this assembly off of what they call the steel body, but we would say it's virtually identical to the bit holder that is the novel component of Salome's patent. But the patent does say, specifically says it provides for quick removal. It says more efficient means for allowing the removal of a bit, column one, 42 to 44. The notches, 32A, 32D, allow for quick removal of the bit 21. Providing ease of removability of bits in their bit holders is described as a need that the patent addresses. Column one lines 36 and 37. That, as I said earlier, Ron, is frankly a stray reference from the party who drafted the patent, which was not me, because what that's really referencing is bits commonly made in the market, and here's an example of one. We'll have what's sometimes called a tire. And I quoted to you a few minutes ago without the use of retaining nuts, clips, or the like, and you said, well, but that's not anywhere in there, and in fact it is. It lines, again, column one lines 59 to 61. You were in the 567? Mm-hmm. In the 567, yes. But again, that's with reference to this undercut flange. There are some patents and some references that are made to an undercut flange. Underneath this flange that rests up against the face of the bit holder, undercuts or dents that would enable one to put a fork-like tool underneath there to pry it out. But that's not something that's even addressed anywhere in either of the two patents involved, so it really truly is a stray reference in the specifications that is disconnected with the claims. And that's the only place where it appears. What Your Honor has hit upon here is one of the errors that we feel the Court clearly made here is by importing limitations into the claims from some of the preferred embodiments that appear in the two patents in suit. The fact that some of the embodiments show a bit with a shank, for example,  and really trying to make the claim I believe there are only two figures in the 155 patent out of a total of 13 that actually show such a bit with a shank on it, and only two of 12 in the 567 patent. So it's not as though each and every preferred embodiment that's addressed in these specifications shows a bit with a shank of this type on it. And certainly the claims don't contain any reference or even discussion of a shank with relation to the bit, yet when the Court interprets the term bit in the claims construction process, it determines that the bit has to have a shank. We don't see that a good sound basis, certainly in the intrinsic evidence that we have here, for making such a conclusion. It's certainly not apparent from the claim language and only a stray reference to it in the specification. The claims recite a shank between the bit holder and the bit block, right? Correct. The claims recite a bit that's mounted onto a bit holder through a first bore, that's in Claim 1, said bit being mountable in a first bore through said bit holder. Is that right? It does. In connection with a bit holder, the claims expressly reference a shank which goes into a second bore in the bit holder, right? No, it's the second... Said bit holder being mountable in a second bore through said bit block. Right, that's these two components here, but not the bit. I guess I don't understand. Is your argument that a bit doesn't have to have a shank, that the plain meaning of bit wouldn't include a shank, or that the shank doesn't have to be cylindrical? I thought from your brief you were saying it doesn't have to be cylindrical, that that would be important to narrow a limitation in, but maybe I didn't understand. Are you actually saying... Let me clarify. I really make alternative arguments. I know. For me, I'm just having trouble keeping track in my mind. The first point I would make is that the bit doesn't have to have a shank at all. The claims don't address that. They leave that open. All it says is mountable. What is the plain meaning, though, of bit? What is the plain meaning of bit? The plain meaning of a bit is something that is a cutting tool, basically. It could be this. It could be this. It could be something entirely different from either of those. There are any number of them out there. It's not specific to the patent, nor is it important to the patent, how the bit gets affixed to the bit holder because the thrust of the patent and the thing that makes it novel, that made it possible for these patents to issue, is this and its interface with the base block. And I might add that the Novapik device that we've accused here has that same interface, structurally virtually identical, only the difference being this being brazed on. Let's hear from the other side, and we'll save you rebuttal time. Thank you. I'm going to leave the devices up here for the time being. The counsel can certainly use them if he feels appropriate. Perhaps. We'll see. Good morning, Your Honors. Mr. Talbot, please. The Solomy patents provide a roadmap on how to avoid infringement. If you look at the 567 patent, which you've already referenced, the first paragraph of the background talks about bits and how they're used in the art. The next paragraph talks about how some bits are received in bit holders, which are then in turn received in bit blocks. And other bits that fit directly in bit holders are directly in a bit block without a bit holder. So, as a competitor, if you want to avoid infringement of the claims, which clearly talk about a bit being fit in a bit holder, which in turn is fit in a bit block, you have two options. You can either make sure that your bit holder doesn't have the claim limitations, or you can choose not to have a bit holder, and you can have a bit that fits directly in a bit block without a bit holder. And if you want to be certain, if you want to be absolutely certain that you don't have a bit holder, Solomy provides an example from the prior art of a prior art reference that does not have a bit holder. Column 1, line 41 of the 567 patent says there's no bit holder in this patent. And they're referring to this US patent 5374111. No bit holder in this patent. So, if you jump to that Dan Beston reference, that 111 that they described as having no bit holder, you see what's on page 261 of your joint appendix. It has a steel part directly inserted into the block. It has a hardened tip. It was tungsten carbide brazed on top. What page are you on? Page 261 of the joint appendix. This is the patent that Solomy clearly stated does not have a bit holder. And it shows, like I said, a steel part directly inserted in the block with a tungsten carbide part brazed on the top. Now, what Novatec has done is put some polycrystal and diamond on the end of their carbide part but, other than that, it's what is shown here. So, as a competitor of Solomy's, if you can't rely on that statement that there's no bit holder shown here, then what can you rely on? Now, Solomy argues that the steel part is a bit holder and that this part brazed on top is the bit. However, that doesn't jive with what they've said and what's shown in this prior reference. I don't see how that can jive. Now, in order to make that argument, they pretty much have to say that the bit is anything, that it doesn't really have structure, that it's just anything, really. The bit or the bit holder? In order to make the argument that this is a bit, that the carbide part that's brazed on there is a bit, they want to remove any real limitations to it. They want to say that it's just anything can be that bit. Well, I think they're saying it has to be a cutting tool affixed to the bit holder. I mean, that's, I guess, what I understand them. Right, but where does that come from? It certainly doesn't come from the description and the specification. I mean, the specification talks about how the bits have shanks, how they're rotatable, how they're removable, how they're mounted in this bore. All those things Novatec's product doesn't have. It doesn't have any of those things. Yes, but those are descriptions under the preferred embodiment in the specification. Those are descriptions of detailed limitations that a bit could, in the preferred embodiment, take. But why? I mean, where is your plain meaning definition for the word bit? The plain meaning definition comes from the specification. No, the plain meaning comes from one of ordinary skill in the art reading the specification. So are you telling me the plain meaning of one of skill in the art when asked in this particular industry, the mining industry, what is a bit? They are going to say it has to be mounted in a bit holder. It has to be removable. No, of course not. That doesn't make sense, right? If you walk up to one of skill in the art and say, what is a bit? They're going to say it's the sharp cutting end on the end of these mining tools. Isn't that what they're going to say? Isn't that the plain meaning to one of skill in the art? I would disagree. I would disagree. I understand you would disagree, but what does the record say that would suggest that isn't right? Or is right? What does the record say about what the plain meaning of a bit is? Well, if you take this to invest in restaurants, for example, this talks about this piece as being a bit. And that's in the record. That's what they're calling this, is a bit. It has a shank. And some of these patents talk about it as being a bit. And so we could bring in any number of people. So then maybe it is correct that based on the prior art, a bit has to have a shank. But I don't understand why one of skill in the art would understand that a bit has to be removable, a bit has to be mountable. Just the word bit. What does that mean? The claim requires it to be mountable in the preamble. So the word bit can't be carrying that water because otherwise the rest of the claim language would be superfluous, right? So I'm not saying the claim doesn't require the bit to be mountable. I'm saying the word bit in and of itself doesn't necessarily require mountability. Does it? Otherwise, why would the claim require mountable if bit automatically meant that? I think I understand what you're saying, but the mountability comes from the claim, obviously, so we don't need to rely on someone of ordinary skill in the art. Yes, but you're saying the word bit also includes a requirement of, for example, removability. Those are all things that come from the specification. Yes, but we don't read limitations from a spec into a claim. The claim says the word mountable. The claim doesn't say the word removable. If you want to interpret the claims, my understanding is that you go first to the specification and then only if there's ambiguity there... Okay, the specification also says made of tungsten. Does every bit, according to this claim, have to be made of tungsten? No, because the... Ah, no, why? Because it's not limited to tungsten. I think it says in there that it could be any hard... But the patent is for a bit holder. Correct. Not for a bit. Right. And what Notasek has done is created something very similar to this Dan Beston reference, which doesn't have a holder. So, under any definition of a holder, it can't be what's shown here. I mean, the 567 patent is very clear on that. And back to your point, we did argue for lots of different elements that were shown in the specification, any one of which could preclude infringement by Novotec's product. Okay. Any more questions? Any more questions? Okay. Thank you, Mr. Johnson. Thank you. Mr. Morris? The reference to Dan Beston I find interesting because Novotec basically is attempting to analogize not to the claims of the Dan Beston patent, but only to one of the figures in the Dan Beston patent. And you really have to read the claims of the Dan Beston patent to understand what that particular invention is all about and how it really doesn't apply here at all. First of all, it's not a two-part invention that is disclosed in Dan Beston, or even shown in the figure. It's a three-part invention. There's a base block. There's a sleeve, which is analogous to the bit holder that enables the bit part to rotate in that sleeve within the base block. Totally different from what the Novopec does. The Novopec, it doesn't rotate. No part of it rotates. The bit part, which we would call the PCB tip carbide bolster subassembly, because it's brazed on, doesn't rotate. And certainly when it's inserted in the base block, it doesn't rotate either, just as the Solome device doesn't rotate in that fashion. Also, interestingly enough, the Dan Beston patent and the figure that they're seized upon apparently as their roadmap to avoid infringement, this figure one in Dan Beston, discloses those undercuts that I was talking about, the stray reference to Dan Beston and the removability of the bit from the bit holder. There are undercuts that are shown in that figure that I believe are identified as item 38 on page 262 of the record. That's all that reference is about, is those undercuts. And none of the claims in either 155 or 567 address the undercuts because they're not part of the patent. So we come back full circle on that issue, really. Our position is that the court erred on both steps of this two-part claims analysis for infringement purposes. They erred on the claims and erred in applying the claims even as they interpreted the claims to the Novopec device. By concluding, even if you assume for the sake of argument, and we certainly don't agree with it, that the bit has to have a shank. It does have a shank. There is a locally cylindrical aspect to this right there. It does mount inside the bit holder or steel body, as they call it. There is a hole, absolutely drilled in the front end of it, bored. Our expert referred to it as a complex geometry bore that starts out, first a chronicle of it, describe it, and then transitions to cylindrical. But certainly it sits in that, and it's mounted in that. And, again, based on what our expert showed in the demonstration, through a simple heating process, it's removable from. And on that last issue, clearly, for summary judgment purposes, there is an issue of fact because as the district court described this whole test of whether it's removable or not, it said, well, the determination has to rest on whether it was intended to be removed by Novatec when it designed this. Well, intent is kind of a buzzword in summary judgment. It's very difficult, if not impossible, to obtain summary judgment when you've got an issue of intent involved, regardless of the context. What someone intended... Of Rule 56, I mean, if you have an affidavit that presents a statement and there's no refutation of it, then you can prove intent. But they didn't present such an affidavit, number one. And number two, there's significant evidence, and my client is entitled to every benefit of every inference, we have a method patent by which Novatec proposes to collect these devices disassemble and reassemble using the usable components again, which mostly would be this part and the stinger on the top. So it's clear that they contemplate through their method patent that this would be removable and reattachable. And they also, in marketing the device, they don't sell it outright to end users, they lease it and require in that lease that the used device be returned to them, again, facilitating that method patent of repurposing, reusing the components of this device again. Can the mining company which is using this, or whomever, if they're using your product, can they swap that out themselves or do they have to send it back to you? They can swap it out themselves. My client sells them, does not lease them. Any more questions? Any more questions? Thank you, Mr. Meyers, Mr. Thompson. Please, let's take another submission.